O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROY RIOS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NEW YORK & COMPANY, INC.; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:17-cv-04676-ODW(AGRx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [20]** |

## I.　INTRODUCTION

Plaintiff Roy Rios initiated this action against Defendant New York & Company, Inc. on May 24, 2017, in Los Angeles County Superior Court. (Compl., ECF No. 15-1.) On June 23, 2017, Defendant removed this case to federal court. (ECF No. 1.) On September 25, 2017, Defendant filed a Motion for Judgment on the Pleadings, which the parties have fully briefed. (ECF Nos. 20–23, 25–26.) For the reasons discussed below, the Court **DENIES** Defendant's Motion.[1]

---

[1] After carefully considering the papers filed in support of, and against, the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

1

## II. FACTUAL BACKGROUND[2]

Plaintiff is blind and requires screen reading software to read and access content on the internet. (Compl. ¶ 1.) Screen reading software vocalizes visual information contained on a computer screen. (*Id.* ¶ 9.) Such software provides "the only method by which a blind person may independently access the internet." (*Id.*) If websites are not designed to be read by screen reading software, then blind individuals are unable to fully access websites and the information they provide. (*Id.*) Adherence to the recommendations of version 2.0 of the Web Content Accessibility Guidelines ("WCAG"), published by a website standards organization, would allow Plaintiff and other blind or vision-impaired individuals to easily navigate websites. (*Id.* ¶ 10.) But Plaintiff does not allege, or request, that Defendant comply with these particular guidelines. (*See id.*; *see also id.*, Prayer for Relief ¶¶ 1–2.)

Defendant is a retailer that provides "important goods and/or services" to the public through its brick-and-mortar locations and through its website. (*See* Compl. ¶ 5.) Defendant operates stores that are places of public accommodation within the meaning of Title III of the Americans with Disabilities Act of 1990 ("ADA"). (*Id.*) Further, Defendant's stores provide services through Defendant's website, www.nyandcompany.com, which grants customers access to: "a location locator, descriptions of its products and services, and many other benefits related to these facilities and services." (*Id.*) Defendant's website is maintained in such a way that blind and visually-impaired individuals are unable to gain equal access to the website because the website is not readable by screen reading software. (*See id.* ¶¶ 1, 12–15.) As a consequence of the barriers he has encountered, Plaintiff alleges that Defendant deters Plaintiff "on a regular basis from accessing Defendant's website[,]" and "from visiting Defendant's store locations." (*Id.* ¶ 4.)

---

[2] The Court recites the facts as pleaded in Plaintiff's Complaint, which the Court is required to accept as true for purposes of this motion. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

2

In sum, Plaintiff alleges that Defendant's policies and practices deny blind individuals, like himself, access to the services and information made available to the public through its website, and thus access to its physical locations. (*Id.* ¶ 16.) Plaintiff brings a claim pursuant to the Unruh Civil Rights Act (the "Unruh Act"), California Civil Code Section 51 *et seq.*, and uses the ADA, 42 U.S.C. § 12101 *et seq.* as a predicate violation. (*See generally* Compl.) Defendant argues that Plaintiff's lawsuit should be dismissed based on due process and primary jurisdiction grounds, or alternatively because Plaintiff has failed to state a claim under the Unruh Act. (*See generally* Mem. of P. & A., ECF No. 20-1.)

### III. REQUESTS FOR JUDICIAL NOTICE

In support of his Opposition, Plaintiff requests that the Court take judicial notice of various court documents from the case *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola. (Exhibits 1–5, ECF No. 21.) Defendant filed a timely objection, and contends that the Court should deny Plaintiff's request because Defendant's due process argument is distinct from the argument put forth in *Gil*. (ECF No. 23.) Despite Defendant's objection, the Court grants Plaintiff's request. *See, e.g.*, *Montantes v. Inventure Foods*, No. CV-14-1128-MWF (RZx), 2014 WL 3305578, at *2 (C.D. Cal. July 2, 2014) ("Courts . . . take judicial notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.") (internal quotations and citations omitted). While the due process arguments in *Gil* may be slightly different, they are relevant to the issues raised in Plaintiff's Opposition.

Next, Defendant requests that the Court take judicial notice of several court orders and records in support of its Motion. (Exhibits A–C, ECF No. 20.) The Court grants Defendant's request to take judicial notice of Exhibits A–C, which are court orders from two cases in the Central District and an amicus brief filed by the Department of Justice ("DOJ"). Defendant also requests that the Court take judicial notice of its website. (Exhibit D, ECF No. 20.) However, Defendant may not use this request to prove that its website is compliant with the ADA. *See Lee v. City of Los*

3

*Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (stating that judicial notice of public records is limited to the existence of the documents, not the truth of their contents). Accordingly the Court takes judicial notice of the fact that Defendant's website exists, but not the truth of its contents. *See id.*

### IV. LEGAL STANDARD

After the pleadings are closed, but within such time as to not delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ P. 12(c). The standard applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6) motions; a judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted). When ruling on a motion for judgment on the pleadings, a court should construe the facts in the complaint in the light most favorable to the plaintiff, and the movant must clearly establish that no material issue of fact remains to be resolved. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). However, "conclusory allegations without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.*

### V. DISCUSSION

In part, Plaintiff premises his claim on Defendant's alleged violation of the ADA, which, in turn, constitutes a violation of the Unruh Act. (Compl. ¶ 21.) Because a violation of any right under the ADA is, per se, a violation of the Unruh Act, the Court begins its analysis by determining whether Plaintiff adequately pleads a violation of the ADA. *See* Cal. Civ. Code § 51(f) ("[a] violation of the right of any individual under the [ADA] . . . shall also constitute a violation of this section."); *see*

*also Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *2 (C.D. Cal. Oct. 3, 2017) (same).

**A.    The ADA's Requirements for Internet Accessibility**

*1.    The ADA Applies to Websites*

Pursuant to Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff asserts that Defendant's stores constitute "place[s] of public accommodation" within the meaning of the ADA. (Compl. ¶ 5). The Ninth Circuit has held that a place of "public accommodation" refers to a physical place. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *see also* 28 C.F.R. § 36.104 (listing a sales establishment as an example of a public accommodation). According to Plaintiff, he "has been deterred from visiting Defendant's physical locations that Plaintiff may locate by using nyandcompany.com." (Compl. ¶ 16.)

The ADA applies to the services *of* a place of public accommodation. *Weyer*, 198 F.3d at 1114. To establish a claim under the ADA, courts only require that there be a "nexus," or, in other words, "some connection between the good or service complained of and an actual physical place." *See CVS Pharmacy*, 2017 WL 4457508, at *3 (citing *Weyer*, 198 F.3d at 1114). Accordingly, a plaintiff may challenge the online services provided by a brick-and-mortar store, so long as the plaintiff establishes a nexus between the online services and the physical place. *Id.* Here, Plaintiff alleges that he was unable to visit Defendant's physical locations because of his inability to utilize Defendant's website. (*See* Compl. ¶ 16.)

Within the meaning of the ADA, discrimination occurs when an individual with a disability is denied the opportunity to benefit from the services of a place of public accommodation, or is offered separate and unequal services. *See* 42 U.S.C. §

12182(b)(1)(A)(i–iii). Compliance with the ADA requires a place of public accommodation to make "reasonable modification" of "policies, practices, and procedures," and to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." *See Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 951 (N.D. Cal. 2006) (citing 42 U.S.C. § 12182(b)(2)(A)(ii–iv)); *see also* 28 C.F.R. § 36.303(c)(1). Moreover, the DOJ, the agency that enforces the ADA, has emphasized that "public accommodations must take steps necessary to ensure that an individual with a disability will not be . . . denied services . . . because of the use of inappropriate or ineffective auxiliary aids." *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544 (July 26, 1991). The DOJ's regulations concerning effective communication, state that "auxiliary aids and services" include "screen reader software . . . or other effective methods of making visually delivered materials available to individuals who are blind or have low vision[.]" *See* 28 C.F.R. § 36.303(b)(2). "The regulations emphasize that while no specific auxiliary aid or service is required in any given situation, whatever auxiliary aid or service the public accommodation chooses to provide must be effective." *CVS Pharmacy*, 2017 WL 4457508, at *4.

### 2. *Plaintiff States a Claim under the ADA*

Turning to Plaintiff's Complaint, he alleges that Defendant's website contains barriers that deny "blind individuals access to the services and information made available" through the website. (*Id.* ¶ 13.) Specifically, blind individuals are prevented from effectively accessing Defendant's website as a result of: (1) missing Alternative Text;[3] (2) empty links that contain no text;[4] (3) redundant links;[5] and (4)

---

[3] "Alternative Text is invisible code embedded beneath a graphical image on a website. . . . The lack of Alternative Text . . . prevents screen readers from accurately vocalizing a description of the graphics." (Compl. ¶ 14.)

[4] "Empty links that contain no text . . . can introduce confusion for keyboard and screen reader users . . . ." (*Id.*)

missing form labels.[6] (*Id.* ¶ 14.) Due to the barriers that Plaintiff encountered on Defendant's website, he could not effectively browse for Defendant's store locations, products, or services. (*Id.* ¶ 15.) The barriers also prevented Plaintiff from independently searching Defendant's website as effectively as sighted individuals. (*Id.*) Thus, Plaintiff claims he has been denied equal access to the services that Defendant offers to the public through its website. (*See id.* ¶¶ 12–13.)

The Court finds that Plaintiff's factual allegations are sufficiently specific to rise above the speculative level and that he shows "some connection" between the service that he complains of (Defendant's website), and the physical place (Defendant's stores). *See Twombly*, 550 U.S. at 555; *see also CVS Pharmacy*, 2017 WL 4457508, at *3. Thus, having established a nexus between the physical place and the service it provides, Plaintiff may challenge the accessibility of Defendant's website. *See CVS Pharmacy*, 2017 WL 4457508, at *3.

Here, Plaintiff states sufficient facts to challenge the accessibility of the website. Plaintiff's allegations state a violation of a right under the ADA because he claims that he is not able to use Defendant's website to browse for store locations, products, or services as effectively as an individual with sight, and thus, Defendant has not made this service of a place of public accommodation equally available to people who are blind or have low vision. (Compl. ¶¶ 9, 15–16.) Consequently, the Court finds that Plaintiff has stated a claim under the Unruh Act. *See* Cal. Civ. Code § 51(f) (stating that a violation of any right under the ADA also constitutes a violation of the Unruh Act); *CVS Pharmacy*, 2017 WL 4457508, at *2.

---

[5] "Redundant links . . . results in additional navigation and repetition for keyboard and screen reader users . . . ." (*Id.*)

[6] "Missing form labels . . . present[] a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users." (*Id.*)

**B.     Defendant's Challenges to Plaintiff's Complaint**

   *1.     Unruh Act Claim*

Defendant argues that because Plaintiff did not allege intentional discrimination, he cannot state a claim under the Unruh Act. (*See id.* at 5–6 (citing *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668 (2009)); *see also* Reply 1, ECF No. 23.) But, in *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004), the Ninth Circuit held that "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation." "This result is mandated by the plain meaning of the Unruh Act's language, which states that a violation of the ADA is, *per se*, a violation of the Unruh Act." *Id.* (citing *Biehl v. C.I.R.*, 351 F.3d 982, 986 (9th Cir. 2003)); *see also Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1011–1012 (C.D. Cal. 2014) (stating that a showing of intentional discrimination is not required where the Unruh Act violation is premised on a violation of the ADA, and that because the plaintiff's complaint "alleges a cognizable ADA claim, he has also properly alleged that [the defendant] violated the Unruh Act").

Defendant also argues that because Plaintiff never tendered the purchase price for any of Defendant's services or products, Plaintiff's claim fails as a matter of law. (*See* Mem. of P. & A. 10–11.) Defendant's contention is misplaced. The "bright-line rule" requiring a person to tender the purchase price for a business's services or products applies when the price itself gives rise to the alleged discrimination. *Compare Surrey v. TrueBeginnings*, 168 Cal. App. 4th 414, 418–419 (2008) (a plaintiff lacked standing to sue under the Unruh Act for *price discrimination* because he did not tender the purchase price for the defendant's services or goods), *with Osborne v. Yasmeh*, 1 Cal. App. 5th 1118, 1122 (2016) (citing *Surrey*, 168 Cal. App. 4th 414) (finding *Surrey*'s "bright-line rule" inapplicable when the plaintiff has "directly experienced a denial of rights" under the Unruh Act).

Finally, Defendant asserts that Plaintiff's claim should fail because the Unruh Act does not require places of public accommodation to make modifications to websites. (Mem. of P. & A. 8.) However, as explained further below, Plaintiff has not requested that Defendant make any modification to its website that is not already required under the equal access provisions of the ADA. (*See* Compl., Prayer for Relief ¶ 2.) Therefore, as previously stated, the Court finds that because Plaintiff has sufficiently stated a claim under the ADA, Plaintiff has also stated a claim under the Unruh Act.

### *2. Injunctive Relief*

In its Reply, Defendant contends that Plaintiff may not obtain any form of injunctive relief that requires Defendant to modify to its website because the Ninth Circuit held that "the removal of an architectural barrier is an alteration or modification, and therefore cannot be required under the Unruh Act." (Reply 2 (citing *Dowling v. MacMarin,* 156 F.3d 1236 (9th Cir. 1998)).) However, because *Dowling* is unpublished and issued before January 1, 2007, it has no precedential value, and "may not be cited to" this Court in this context. *See* 9th Cir. R. 36-3(a), 36-3(b) (stating that "[u]npublished dispositions . . . of this [c]ourt are not precedent . . . .").

Defendant next directs the Court to a footnote in *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 444 n.1 (N.D. Cal. 1994), which Defendant contends establishes that injunctive relief is unavailable in an Unruh Act claim. (Reply 2.) The footnote provides a legislative history of the Unruh Act, and explains that the court ruled in a prior order that the "California Assembly expressly declined to adopt and incorporate any ADA standards requiring the physical modification of existing facilities." *Id.* Based on this, the court held that "it is the *law of the case* that no damages or injunctive relief are available under § 51 for disability access claims based on theaters' failure to modify their structures . . . except insofar as such claims involve facilities built or remodeled [after certain amendments to the Unruh Act]." *Id*

(emphasis added). The Court does not find this reasoning persuasive or applicable to the facts, as alleged, here.

Section 51(d) of the Unruh Act states that "Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required *by other provisions of law* . . . .". Cal. Civ. Code § 51(d) (emphasis added). When interpreting this provision, the court in *National Federation of the Blind* saw "no reason why the Unruh Act's reference to other provisions of law would not refer to . . . the ADA." 582 F. Supp. 2d at 1205 (addressing former version of Unruh Act). Furthermore, the court acknowledged the plaintiffs' point that "the modification language refers to physical modification or construction, and, therefore, would not restrict remedies" in an action involving "only modification of a website." *Id.*; *see also Earll v. eBay Inc.*, No. 5:11-cv-00262-EJD, 2012 WL 3255605, at *5 n.1 (N.D. Cal. Aug. 8, 2012) (noting that defendant had not "demonstrated that correcting the alleged barriers to accessing its website would require that eBay.com be modified").

Finally, Defendant argues that the Court should dismiss Plaintiff's claim for injunctive relief because Plaintiff failed to oppose its arguments in the Motion. (Reply 2.) While a court may treat a party's failure to respond to particular arguments in a motion as a concession of the point, *see, e.g., Garrett v. City of Los Angeles*, No. CV 12-1670 FMO (SSx), 2014 WL 11397949, at *11 (C.D. Cal. Mar. 3, 2014), the Court declines to do so here. Accordingly, Plaintiff has sufficiently pleaded a claim for injunctive relief.

3. *Due Process*

Defendant contends that Plaintiff's claim is "fundamentally unfair" and violates the principles of due process; "[d]ue process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." (Mem. of P. & A. 13 (quoting *United States v. AMC Entm't, Inc.*, 549 F.3d 760,

768 (9th Cir. 2008)).) Defendant argues that Plaintiff premises his case upon Defendant's failure to comply with "vague" WCAG guidelines that provide methods to allow blind and low vision people access to websites. (*Id.* at 13–15.) Defendant asserts that because "[t]he DOJ has never stated that private businesses that operate a website for the public to use must comply with [the WCAG]," Plaintiff's requested injunction and damages would violate due process because there are no objective standards by which Defendant's conduct can be adjudged. (*See id.* at 13, 15.)

Defendant misconstrues the Plaintiff's allegations. Plaintiff has not requested an injunction requiring Defendant to comply with the WCAG guidelines; rather, Plaintiff states that websites that adhere to WCAG's recommendations are accessible for blind individuals. (*Compare* Compl. ¶ 10, *with* Compl., Prayer for Relief ¶¶ 1–2.) Thus, the WCAG guidelines may provide a roadmap of what would allow Plaintiff to access Defendant's website, but the fact remains that he alleges he is unable to access Defendant's website because he is blind. *See CVS Pharmacy*, 2017 WL 4457508, at *4 (citing *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 956) ("Therefore, whether or not CVS's digital offerings must comply with the Web Content Accessibility Guidelines, or any other set of noncompulsory guidelines, is a question of remedy, not liability."). Defendant also relies on *Robles v. Dominos Pizza LLC* for its due process arguments, but *Robles* is distinguishable because in that case, the plaintiff sought to *require* businesses to comply with the WCAG guidelines. No. CV16–06599 SJO (SPx), 2017 WL 1330216, at *5 (C.D. Cal. Mar. 20, 2017) (noting that "Plaintiff seeks to impose on all regulated persons and entities a requirement that they 'compl[y] with the WCAG 2.0 Guidelines….").

Furthermore, the lack of specific guidelines from the DOJ does not excuse Defendant from its obligation to comply with the general mandates of the ADA. *See Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014) (holding that "[t]he lack of specific regulations cannot eliminate a statutory obligation" and rejecting the defendant's argument that it lacked notice that the ADA's general mandate applied

11

even absent technical specifications); *see also Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 445 (9th Cir. 1994) (finding that a statute's general duties apply even when there are no specific standards, and that more specific regulations would only serve to "amplify and augment" a defendant's general duties under the statute). "[T]he DOJ has made it abundantly clear that websites fall under Title III's requirements, so long as they meet the nexus test . . . ." *CVS Pharmacy*, 2017 WL 4457508, at *5 (collecting sources evidencing the DOJ's position regarding whether the accessibility requirements of the ADA apply to websites). Defendant thus had sufficient notice that blind individuals, like Plaintiff, are entitled full and equal access to its website. *See* 42 U.S.C. § 12182(a). Accordingly, Plaintiff's complaint, as plead, does not violate Defendant's due process rights.

### 4. *Primary Jurisdiction Doctrine*

Defendant contends that the Court should stay or dismiss this case, pursuant to the primary jurisdiction doctrine, pending further guidance from the DOJ regarding the minimum accessibility standards for websites. (Mem. of P. & A. 15–17.) "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine "is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency' . . . ." *Id.* (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

Whether to invoke the doctrine is within the sound discretion of the court. *Syntek Semiconductor Co.*, *v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). Although there is no "fixed formula" for applying the doctrine, the Ninth Circuit has provided a four factor test to guide a court's discretion: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or

activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* (citing *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).

Defendant's primary jurisdiction argument has been rejected by other courts in the Central District in factually similar cases. *See, e.g.*, *Gorecki v. Hobby Lobby Stores, Inc.*, CV 17-1131-JFW (SKx), 2017 WL 2957736, at *7 (C.D. Cal. June 15, 2017) (refusing to invoke the primary jurisdiction doctrine); *see also CVS Pharmacy*, 2017 WL 4457508, at *7 (declining to apply primary jurisdiction doctrine, and holding that "[a] determination of liability does not necessarily require the [c]ourt to master complicated web standards, but rather asks the [c]ourt to make exactly the same sort of accessibility determinations that it regularly makes when evaluating the accessibility of physical locations.").

Similarly, the Court finds that this case is not unique, "as federal courts have resolved effective communication claims under the ADA in a variety of contexts— including cases involving allegations of unequal access to goods, benefits and services provided through websites." *See Hobby Lobby*, 2017 WL 2957736, at *7 (citing *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d. 196 (D. Mass. 2012)). In line with other courts in this circuit and elsewhere, the Court declines to apply the primary jurisdiction doctrine.

///
///
///
///
///
///
///
///
///

## VI. CONCLUSION

For the abovementioned reasons, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings. (ECF No. 20.)

**IT IS SO ORDERED.**

November 16, 2017

_____
 **OTIS D. WRIGHT, II
 UNITED STATES DISTRICT JUDGE**